# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANTRINA A. DAVIS, | CASE NO. CV-F-05-00371 LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY ACTION** |
| vs. | (Docs. 21-23, 26, 33, 34.) |
| CIGNA HEALTHCARE, | |
| Defendant. | |

## **INTRODUCTION**[1]

Defendant Connecticut General Life Insurance Company ("Connecticut General")[2] seeks to compel pro se plaintiff Grantrina Davis ("Ms. Davis") to arbitrate her sexual harassment claims and to stay this action. This Court considered Connecticut General's motions to compel arbitration and to stay this action on the record and without oral argument and vacates the July 29, 2005 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS Connecticut General's motions to compel and to stay arbitration and SETS a status conference for February 9, 2006

---

[1] Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a June 20, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.

[2] Although plaintiff's complaint names CIGNA Healthcare as defendant, plaintiff was employed by Connecticut General, a subsidiary of CIGNA Corporation ("CIGNA"). Plaintiff erroneously sues Connecticut General as CIGNA Healthcare.

1

at 8:30 a.m. in Department 6 (LJO).

## BACKGROUND

### Arbitration Policy

During December 11, 2000 to April 8, 2005, Ms. Davis worked as a Connecticut General claims processor. In 1995, CIGNA, for it and Connecticut General, implemented a national arbitration policy ("arbitration policy") to require binding arbitration as the exclusive remedy for employment disputes. The arbitration policy, as described in the "You and CIGNA" employee handbook, provides in pertinent part:

> *Arbitration* – If an employee is not satisfied with the result of either the Speak Easy Process or the Peer Review Process, and the issue falls under the scope of the Arbitration Policy, he or she may request arbitration, which is the last step of the Employment Dispute Resolution Program. The Arbitration Policy was designed as a faster, less expensive substitute for going to court. ***Mutual promises by both the employee and the employer to arbitrate employment related legal claims is a term and condition of an employee's employment and arbitration must be used rather than going to court to enforce legal rights and claims (or going to a government agency which in some states acts like a court in judging claims)***.
>
> The agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment. If the law in the state in which an employee works provides for a government agency hearing to decide questions of law related employment discrimination claims, then the agreement of the employee and the employer is that arbitration must be used instead of a government agency hearing to decide the claim or going to court and having a jury.
>
> . . .
>
> The employee and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by the employee and employer in accordance with the employer's arbitration rules and procedures will be sole and exclusive judge of the proper interpretation of the agreement of the parties as well as the rules and procedures of the arbitration process. The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury. (Bold and italics in original.)

### Ms. Davis' Employment Application

Ms. Davis completed a December 8, 2000 employment application which states in pertinent part:

> I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR CESSATION OF EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESS OF MY EMPLOYER, WHICH INCLUDES FINAL AND BINDING ARBITRATION WITH A NEUTRAL EVALUATOR. I UNDERSTAND THAT MY EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE RESOLUTION PROCESSES AND THAT COPIES OF THE POLICIES AND PROCEDURES DESCRIBING THE DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO ME.
>
> I agree to fulfill all of the requirements listed above . . . (Uppercase and underlining in original.)

Ms. Davis signed a December 6, 2000 Employee Handbook Receipt to acknowledge she received a copy of the "You and CIGNA" employee handbook and reviewed "the material, which includes information on policies, programs, and services for employees of the CIGNA companies."

### Ms. Davis' Claims

Plaintiff proceeds on her first amended complaint to allege that a coworker imposed a "Sexual Harassment misconduct" on Ms. Davis, that Ms. Davis addressed her complaint with her supervisor, that "a hostile environment arose," and that the coworker "continued making sexual advances." Ms. Davis refused Connecticut General's May 13, 2005 letter request to arbitrate Ms. Davis' claims, and Connecticut General responded with its motions to compel arbitration and to stay this action.

### DISCUSSION

### Federal Law

Connecticut General contends that Ms. Davis was a party to a binding arbitration agreement that applies to her claims here. According to Connecticut General, Ms. Davis' employment was subject to the arbitration policy. In her opposition papers, Ms. Davis appears to claim she was unaware of arbitration requirements.

Arbitration is a way to resolve disputes "that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920 (1995). Arbitration clauses limit a court's power: "Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1294 (1992); *see Muh v. Newberger, Loeb & Co., Inc.*, 540 F.2d 970, 972 (9th Cir. 1976) (If the parties have

agreed to arbitrate, "the entire controversy must be referred to the arbitrator, including the validity of the contract.") A contractually based arbitration "can be brought to conclusion entirely extrajudicially, and . . . the judiciary's supervision is limited to confirming, vacating, or correcting any resultant award." *Brock v. Kaiser Foundation Hospitals*, 10 Cal.App.4th 1790, 1806, 13 Cal.Rptr.2d 678 (1992); *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.*, 29 Cal.App.4th 1459, 1468, 35 Cal.Rptr.2d 200, 205 (1994). "[A] court can properly stay a suit before it if *any* issue in the suit is arbitrable, even if some issues are not." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir.) (italics in original), *cert. denied*, 522 U.S. 912, 118 S.Ct. 294 (1997).

Connecticut General notes that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., applies to written arbitration agreements in employment cases and mandates that plaintiff's claims are subject to arbitration. Written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858 (1984). "The enactment establishes a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003). "[F]ederal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3rd Cir. 1999). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital v. Mercury Construction*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

In the employment context, the United States Supreme Court has explained that "for parties to employment contracts . . . there are real benefits to the enforcement of arbitration provisions":

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. *See Gilmer*, 500 U.S., at 30-32, 111 S.Ct. 1647. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial

4

contracts. . . . The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'"

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 1313 (2001).

A federal court is bound to enforce agreements to arbitrate:

> By it terms, the Act [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. [9 U.S.C.] §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985) (italics in original).

## California Law

Connecticut General further points out that California law favors arbitration. The California Arbitration Act ("CAA"), Cal. Code Civ. Proc., §§ 1280, et seq.,, like the FAA, provides a comprehensive scheme to enforce arbitration. The California Supreme Court has explained:

> California law, like federal law, favors enforcement of valid arbitration agreements. . . . Thus, under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . . In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts.

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 98, 99 Cal.Rptr.2d 745 (2000).

The CAA defines "agreement" to include "agreements between employers and employees." Cal. Code Civ. Proc., § 1280(a). Like the FAA, the CAA seeks to enforce arbitration agreements: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. Proc., § 1281.

California Code of Civil Procedure section 1281.2 provides a procedure to enforce an arbitration provision:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the

controversy if it determines that an agreement to arbitrate the controversy exists . . .

"Thus, under section 1281.2, it is the trial court that determines if there is a duty to arbitrate the particular controversy which has arisen between the parties. . . . Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration." *United Transportation Union v. Southern Cal. Rapid Transit Dist.*, 7 Cal.App.4th 804, 808, 9 Cal.Rptr.2d 702, 704 (1992). Broad contractual provisions for arbitration are liberally construed. *Posner v. Grunwald-Marx, Inc.*, 56 Cal.2d 169, 175, 14 Cal.Rptr. 297 (1961).

### **Statutory Claims**

Connecticut General argues that Ms. Davis agreed to arbitrate based on her employment application and acknowledgment of receipt and review of the employee handbook, including its description of the arbitration policy. Connecticut General contends that even federal and California statutorily-based claims are subject to arbitration.

The United States Supreme Court has held that "federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the FAA because the agreement only determines the choice of forum." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295, n. 10, 122 S.Ct. 754 (2002). "In these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, form.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 1647 (1985)).

Nothing in the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq., "suggests it was intended to prohibit arbitration." *Armendariz*, 24 Cal.4th at 98, 99 Cal.Rptr.2d at 757. FEHA claims "are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights." *Armendariz*, 24 Cal.4th at 91, 99 Cal.Rptr.2d at 751 (italics in original).

The California Supreme Court imposes five minimum requirements to arbitrate statutory civil rights pursuant to a mandatory employment arbitration agreement:

Such an arbitration agreement is lawful if it "(1) provides for neutral arbitrators, (2)

provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use the arbitration as a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'"

*Armendariz*, 24 Cal.4th at 103, 99 Cal.Rptr.2d at 760 (quoting *Cole v. Burns International Security Services*, 105 F.3d 1465, 1482 (D.C. 1997)).

Connecticut General notes that its arbitration rules call for selection of a neutral evaluator in that the American Arbitration Association ("AAA"), which conducts arbitrations, "will send to the employee and CIGNA an identical list of all arbitrators who are members of the regional Employment Dispute Resolution Roster of AAA." The arbitration rules permit an employee and CIGNA to object to names on the list and sets forth further criteria for selection of an impartial arbitrator.

The arbitration rules set forth discovery procedures, including exchange of witnesses and documents and up to two days of depositions. The arbitration rules require the arbitrator to submit a written, signed decision to "include an opinion giving the reasons for the decision. The decision will be implemented in the manner required by law." The arbitration rules empower the arbitrator "to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." The arbitration rules limit an employee's administrative costs to $100: "Unless the employee chooses in his/her demand for arbitration to share equally in such expenses, CIGNA will pay 100% of any mediation/arbitration administrative fees required by the AAA in excess of the one hundred dollars ($100) paid by the employee." The $100 limit is $150 less than this Court's filing fee.

Ms. Davis does not meaningfully challenge arbitration. Ms. Davis appears to claim she was unaware of arbitration as the next step in the process to address her claims. Ms. Davis does not deny that she signed and read her employment application to commit to arbitration and signed a receipt to acknowledge she received the employee handbook describing arbitration. Plaintiff was "bound by the provisions of the [arbitration] agreement regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document." *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674, 53 Cal.Rptr.2d 515, 520 (1996). Moreover, "a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it."

7

*Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984). To relieve a party of contractual responsibilities on grounds he/she did not read an arbitration clause would unreasonably permit the party to "choose alternatively to seek arbitration or, should he prefer, to perform and receive the benefits of the contract." *Parr v. Superior Court*, 139 Cal.App.3d 440, 445-446, 188 Cal.Rptr. 801, 805 (1983).

Ms. Davis raises no substantive dispute as to a valid agreement to arbitrate her employment claims or as to the scope of claims subject to arbitration. Plaintiff's employment application subjects to arbitration "ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR CESSATION OF EMPLOYMENT EXCLUSIVELY." (Uppercase and underlining in original.) A broad clause subjecting to arbitration disputes arising under or in connection with employment presumptively covers all employment-related controversies. *See Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2nd Cir. 1998). Ms. Davis' arguments regarding an agreement to arbitrate are subject to arbitration and are not within this Court's purview. As outlined above, Connecticut General has demonstrated substantial federal and state authority to arbitrate Ms. Davis' claims. Ms. Davis' notion that arbitration infringes First Amendment rights makes no sense in that Connecticut General is not a state actor subject to First Amendment claims. Arbitration is the proper forum to address Ms. Davis' claims at issue here.

**Stay Of Action**

9 U.S.C. § 3 addresses stay of proceedings referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

"A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling arbitration." *Alexander v. Anthony Int'l., L.P.*, 341 F.3d 256, 263 (3rd Cir. 2003).

Since Ms. Davis' claims are subject to arbitration, this Court must stay this action.

**CONCLUSION AND ORDER**

For the reasons discussed below, this Court:

1. GRANTS Connecticut General's motion to compel Ms. Davis' to arbitrate her claims before AAA pursuant to Connecticut General's arbitration policy and rules;

2. STAYS this action pending arbitration; and

3. SETS a status conference for February 9, 2006 at 8:30 a.m. in Department 6 (LJO). The parties are encouraged to appear at the status conference by telephone by arranging a one-line conference call and adding the Court at (559) 498-7322. At the conference, the parties shall be prepared to discuss the status of arbitration of plaintiff's claims.

IT IS SO ORDERED.

**Dated:   July 25, 2005**                             **/s/ Lawrence J. O'Neill**
66h44d                                                                  UNITED STATES MAGISTRATE JUDGE